# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| JAMES SAMUEL FEGER, JR., | )<br>) |
| Plaintiff, | )<br>) |
| v. | )    No. 4:19-CV-00339-DGK<br>) |
| ANDREW SAUL,<br>Commissioner of Social Security, | )<br>)<br>) |
| Defendant. | )<br>) |

## ORDER AFFIRMING THE COMMISSIONER'S DECISION

This action seeks judicial review of the Commissioner of Social Security's ("the Commissioner") decision denying Plaintiff James Samuel Feger, Jr.'s applications for Social Security disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401–434, and Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381–1383f. The Administrative Law Judge ("ALJ") found Plaintiff had the severe impairments of coronary artery disease status post myocardial infarction, cardiomyopathy, hyperlipidemia, hypertension, status post open reduction internal fixation of patellar fracture, and status post open reduction internal fixation of distal radial fracture but could work as a small-parts assembler, hand packager, and sub assembler.

After carefully reviewing the record and the parties' arguments, the Court finds the ALJ's opinion is supported by substantial evidence on the record as a whole. The Commissioner's decision is AFFIRMED.

### Procedural and Factual Background

The complete facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

Plaintiff filed his applications for benefits on August 5, 2016, alleging a disability-onset date of January 9, 2010. The Commissioner denied the applications at the initial claim level, and Plaintiff appealed the denial to an ALJ. The ALJ held a hearing and, on July 27, 2018, issued a decision finding Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for review on March 1, 2019, leaving the ALJ's decision as the Commissioner's final decision. As Plaintiff has exhausted all administrative remedies, judicial review is now appropriate under 42 U.S.C. §§ 405(g) and 1383(c)(3).

## Standard of Review

A federal court's review of the Commissioner's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole and whether the ALJ committed any legal errors. *Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016). Substantial evidence is less than a preponderance but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Id.* The court must "defer heavily" to the Commissioner's findings and conclusions. *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015); *see Biestek v. Berryhill*, 139 S. Ct. 1148, 1157 (2019) (noting the substantial evidence standard of review "defers to the presiding ALJ, who has seen the hearing up close"). The court may reverse the Commissioner's decision only if it falls outside of the available zone of choice; a decision is not outside this zone simply because the evidence also points to an alternate outcome. *Buckner v. Astrue,* 646 F.3d 549, 556 (8th Cir. 2011).

## Discussion

The Commissioner follows a five-step evaluation process to determine whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a medically

determinable impairment that has lasted or can be expected to last for a continuous period of at least twelve months.[1]  42 U.S.C. § 423(d)(1)(A).  Plaintiff argues the ALJ erred at step four by crafting a residual functional capacity ("RFC") unsupported by substantial evidence, and at step five in leaving a conflict between the testifying vocational expert and the Dictionary of Occupational Titles ("DOT") unresolved.  These arguments are unavailing.

## I. The RFC is supported by substantial evidence.

An RFC is the most a claimant can do despite the combined effect of all credible limitations.  *See* 20 C.F.R. § 404.1545(a)(1).  The claimant has the burden to prove the RFC at step four of the sequential evaluation process.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001).  An ALJ develops the RFC based on all relevant evidence of record, including the claimant's subjective statements about his limitations, as well as medical opinion evidence.  *Mabry v. Colvin*, 815 F.3d 386, 390 (8th Cir. 2015).

### A. The ALJ did not err in failing to include handling and fingering limitations in the RFC.

Plaintiff first argues the ALJ erred by failing to include handling and fingering limitations in the RFC despite finding that Plaintiff suffered from a severe impairment of Plaintiff's status post open reduction and internal fixation of the distal radial fracture (Doc. 11 at 12).  When a claimant has a severe impairment that does not meet a listed impairment, the ALJ will consider "the limiting effects of all [the claimant's] impairment(s), even those that are not severe in

---

[1] "The five-step sequence involves determining whether (1) a claimant's work activity, if any, amounts to substantial gainful activity; (2) his impairments, alone or combined, are medically severe; (3) his severe impairments meet or medically equal a listed impairment; (4) his residual functional capacity precludes his past relevant work; and (5) his residual functional capacity permits an adjustment to any other work.  The evaluation process ends if a determination of disabled or not disabled can be made at any step."  *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 632 n.1 (8th Cir. 2014); *see* 20 C.F.R. §§ 416.920(a)–(g).  Through step four of the analysis the claimant bears the burden of showing that he is disabled.  After the analysis reaches step five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform.  *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009).

3

determining [the claimant's] residual functioning capacity." 20 C.F.R. § 416.945(e). Thus, not every impairment listed as "severe" by the ALJ in step two must be specifically accounted for in the RFC. While Caleb Masterson, D.O., a state consultative physician who examined Plaintiff in January 2017, found Plaintiff had some reduced range of motion and slightly reduced grip strength, Plaintiff was fully able to extend his hand, make a fist, oppose his fingers, and lift and carry light objects. R. at 355–60. Moreover, imaging indicated Plaintiff's left wrist was not fractured and had only mild arthritis. R. at 366. No other examinations revealed any abnormalities in Plaintiff's left wrist following his surgery. R. at 333, 503–07.

Kevin Threlkeld, M.D., a medical consultant who reviewed the evidence of the record— including Dr. Masterson's examination—concluded that Plaintiff had no manipulative limitations. R. at 61–63. Instead, Dr. Threlkeld accounted for Plaintiff's prior wrist fracture by limiting him to the lifting and carrying limits of light work, which the ALJ adopted. Because Plaintiff has not presented evidence that his wrist fracture affected his ability to handle or finger any more than already accounted for by his limitation to light work, the ALJ did not err in failing to include further handling and fingering limitations in the RFC.

### B. The ALJ properly discredited Plaintiff's subjective complaints.

Plaintiff next complains that the ALJ improperly discredited his subjective complaints, and, therefore, did not account for them in the RFC. Credibility questions are "primarily for the ALJ to decide, not the courts." *Baldwin v. Barnhart*, 349 F.3d 549, 558 (8th Cir. 2003). "If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, the Court should defer to the ALJ's credibility determination." *Gregg v. Barnhart*, 354 F.3d 710, 713 (8th Cir. 2003). In analyzing a claimant's subjective complaints, the ALJ must consider the *Polaski* factors, which include the claimant's daily activities; the duration, frequency, and intensity of pain; the

dosage, effectiveness and side effects of medication; any precipitating and aggravating factors; any functional restrictions; the claimant's work history; and the absence of objective medical evidence to support the claimant's complaints. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).

Here, the ALJ properly discounted Plaintiff's subjective complaints because they were inconsistent with the objective evidence in the record, including the lack of restrictions from Plaintiff's treatment providers, Plaintiff's receipt of conservative treatments, Plaintiff's daily activities, and Plaintiff's poor work record prior to his alleged onset date. These are good reasons for discounting subjective complaints. *See, e.g.*, *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003) (finding the ALJ did not improperly discount the plaintiff's subjective complaints because they were inconsistent with his daily activities and medical records).

Plaintiff's arguments to the contrary are unavailing. For example, he contends that the ALJ improperly considered Plaintiff's conservative treatments because Plaintiff had no money or insurance to pay for treatment. But Plaintiff's allegations that he could not afford these treatments is contradicted by his continuous history of medications and visits to various physicians (Doc. 11 at 2–9; showing a pattern of filling and refilling prescriptions for Zofran, Lovastatin, Coreg, Norco, and Zantac, beginning in January 2010 and continuing through January 2018). Moreover, this was not a case where the ALJ discounted Plaintiff's subjective complaints because he could not afford to get treatment, but rather because the plaintiff sought treatment and his treating physicians recommended conservative treatment. Thus, the ALJ did not err in discounting Plaintiff's subjective complaints based, in part, on his conservative treatment history.

Similarly, Plaintiff claims the ALJ wrongly discounted Plaintiff's subjective complaints based on a lack of an opinion from Plaintiff's "treating doctor as to his functional limitations"

(Doc. 11 at 15). The record shows that, despite complaints of generalized fatigue, headaches, chest pain, and shortness of breath, Plaintiff's doctors continued to prescribe medications but did not impose work-related limitations. As with Plaintiff's prior argument, the ALJ did not err in relying on this fact, in conjunction with the other *Polaski* factors, to discount Plaintiff's subjective complaints.

Plaintiff further argues that the ALJ reported Plaintiff's daily activities in a selective and misleading way. The ALJ, however, considered that Plaintiff "variously reported and testified that he is capable of taking his girlfriend's children to school, cooking simple meals, intermittent housecleaning, doing laundry, going out alone, driving, shopping, handling finances, and getting along with others." R. at 23. These daily activities are supported by the record. R. at 43–44, 229–32, 343. Thus, the ALJ did not mischaracterize the extent of Plaintiff's daily activities.

Put simply, Plaintiff requests this Court adopt an alternative view of the facts and substitute its judgment for the ALJ's. But the ALJ's credibility determination is supported by substantial evidence on the record as a whole, and the Court declines to do so.

### C. The ALJ properly omitted any limitation for loud noises.

Next, Plaintiff argues the ALJ erred by failing to include Plaintiff's complained-of migraine headaches in the RFC (Doc. 11 at 12–13). Plaintiff argues that the RFC could have easily included a limitation on Plaintiff's exposure to loud noises, a "known trigger for migraines." *Id.* As discussed, the ALJ properly discounted Plaintiff's subjective complaints as inconsistent with the other evidence in the record. Here, Plaintiff does not present any medical evidence that he experiences migraines triggered by loud noises, and so the ALJ did not err in not including a limitation for loud noises.

### D. The ALJ properly accounted for Dr. Masterson's opinion.

Finally, Plaintiff argues the ALJ erred at step four by failing to adopt all the limitations supported by the consultative examination performed by Dr. Masterson despite giving his opinion great weight. Specifically, Plaintiff argues the ALJ did not account for the fact that Plaintiff had reduced grip strength, could not squat and rise, had a faint S3 murmur, and had an unsteady, limping gait at the consultative examination.

As an initial matter, an ALJ is not bound by any specific medical opinion to formulate an RFC if sufficient medical evidence supports the RFC as crafted. And, in this case, Dr. Masterson did not opine that Plaintiff had any greater work-related limitations than reflected in the RFC because he did not include any work-related limitations in his opinion. Nevertheless, the RFC is consistent with Dr. Masterson's clinical observations.

For example, the ALJ accounted for any limitations resulting from Plaintiff's unsteady gait and failure to squat by limiting him to jobs that allowed the use of a "handheld assistive device for prolonged ambulation" and restricting him to light work. R. at 18, 20. Moreover, while Dr. Masterson found Plaintiff had some reduced range of motion and slightly reduced grip strength, Plaintiff was fully able to extend his hand, make a fist, oppose his fingers, and lift and carry light objects. R. at 355–60. Similarly, Dr. Masterson observed that Plaintiff had a faint S3 murmur, but his cardiac and respiratory examinations were repeatedly unremarkable. R. at 278–85, 405–06, 415. Thus, these latter clinical observations, when viewed in the entirety of the record, did not support further limitations than those already accounted for in the RFC.

The ALJ did not err in formulating Plaintiff's RFC.

## II. The vocational expert did not testify inconsistently.

Finally, Plaintiff argues the ALJ erred at step five by relying on a vocational expert's testimony that was inconsistent with the DOT because the ALJ never resolved the inconsistency (Doc. 11 at 18). At step five, the ALJ has the burden to show Plaintiff can perform other jobs in the national economy. Here, the ALJ determined Plaintiff could perform the work of a small-products assembler, hand packager, and subassembler. R. at 25–26.

Plaintiff contends that an unresolved conflict exists because small-products assemblers and subassemblers work with machinery, but the ALJ precluded more than occasional exposure to excessive vibration and hazards such as machinery with moving mechanical parts. R. at 20. This argument is without merit because neither job involves exposure to mechanical parts. First, considering the role of a small-products assembler, the DOT states that work is done "by hand tweezers, or tongs . . . . or using handtools or portable powered tools." DOT 706.684-022. While the work may include loading and unloading of "previously setup machines" that have moving mechanical parts, the work itself does not involve the use of those machines. *Id.* Next, the job of a subassembler involves the use of a soldering iron, handtools, or portable powered tools. DOT 729.684-054. But those instruments do not involve excessive vibration or constitute machinery with moving mechanical parts. Therefore, the vocational expert did not testify inconsistently with the DOT.

Moreover, even assuming *arguendo* that an unresolved conflict exists, any error is harmless since Plaintiff would still be able to perform other work as a hand packager. Consequently, the ALJ met his burden at step five.

## Conclusion

For the reasons discussed above, the Commissioner's decision is AFFIRMED.

8

**IT IS SO ORDERED.**

Date:   May 19, 2020                              /s/ Greg Kays
                                                  GREG KAYS, JUDGE
                                                  UNITED STATES DISTRICT COURT